**CENTRA, INC., Central Cartage Company, Central Transport, Inc., CC Eastern, Inc., Petitioners,**

v.

**Peter W. HIRSCH, Regional Director Region Four, National Labor Relations Board and National Labor Relations Board, Respondents.**

Civ. A. No. 85–1661.

United States District Court,
E.D. Pennsylvania.

Oct. 7, 1985.

David E. Rosenbaum, Pechner, Dorfman, Wolffe, Rounick & Cabot, Philadelphia, Pa., for petitioners.

Arleen A. Armstrong, Asst. Gen. Counsel for Sp. Litigation, and Corinna Lothar Metcalf, N.L.R.B., Washington, D.C., Leonard Leventhal, Regional Atty.—N.L.R.B.—Region 4, Philadelphia, Pa., for respondents.

## MEMORANDUM and ORDER

SHAPIRO, District Judge.

The National Labor Relations Board ("NLRB") has moved for attorneys' fees and expenses under Federal Rule of Civil Procedure 11 on the ground that Petitioners' complaint in Mandamus was filed in bad faith to harass the NLRB.

Petitioners, Centra, Inc., Central Cartage Company, Central Transport, Inc., and CC Eastern, Inc. ("Centra"), sought injunctive relief to compel respondents Peter Hirsch and the National Labor Relations Board ("NLRB") to postpone the date of an unfair labor practice hearing before an Administrative Law Judge in Case No. 4–CA–14701, now pending before the NLRB, Region Four, from April 15, 1985 to any date after June 1, 1985 and to desist from filing, threatening to file or prosecuting a preliminary injunction under Section 10(j) of the National Labor Relations Act ("NLRA") (29 U.S.C. § 160(j). Jurisdiction was invoked under 28 U.S.C. § 1331, 29 U.S.C. § 141 *et seq.*, the NLRA (29 U.S.C. §§ 151 *et seq.*) and under 28 U.S.C. § 1361, the Mandamus Act.

On November 7, 1984, Highway Truck Drivers and Helpers Local Union No. 107 ("Local 107") filed an unfair labor practice charge with the NLRB, Region Four, against petitioner Central Cartage Company for discrimination against its employees in changing its form of operation from company-employed drivers to owner/operators in violation of §§ 8(a)(1) and 8(a)(3) of the NLRA. 29 U.S.C. §§ 158(a)(1) and 158(a)(3). On November 9, 1984, Local 107 amended its charge by adding an allegation that petitioner had refused to bargain with the union in violation of § 8(a)(5) of the NLRA. 29 U.S.C. § 158(a)(5). On November 15, 1984, Board Agent Joan F. Homer advised counsel for petitioner Central Cartage Company that the NLRB was considering seeking temporary relief under Section 10(j) of the NLRA pending the outcome of the unfair labor practice hearing.

On February 22, 1985, counsel for the NLRB issued a complaint charging unfair labor practices against petitioners Central Cargage Company, Central Transport, Inc. and CC Eastern, Inc. The complaint alleged that all four petitioners constituted a "single employer" and that CC Eastern, Inc. was an "alter ego" of petitioner Central Cartage Company. A hearing was scheduled for March 18, 1985. On February 25, 1985, petitioners claimed that they were unable to prepare adequately for a hearing because of: (a) counsel's inability to investigate and prepare a defense with respect to allegations concerning the "single employer" and "alter ego" issues in time to try the case on March 18, 1985; (b) counsel's inability within that time to prepare adequately a defense with respect to a nationwide program of converting employees to independent owners; and (c) coun-

sel's unavailability during the first three weeks of March. Petitioners requested that the hearing be held after June 1, 1985.

On February 28, 1985, counsel claimed as an additional ground for postponing the hearing date that their preparation of an answer was impeded by the unavailability of critical witnesses and officers of the petitioners who were participating in collective bargaining negotiations with the International Brotherhood of Teamsters concerning the National Master Freight Agreement. On March 5, 1985 the NLRB rescheduled the hearing from March 18, 1985 to April 15, 1985. Petitioners then filed a request for permission to appeal the Regional Director's ruling with the Executive Secretary of the NLRB; the request was denied on March 27, 1985. On March 24, 1985, the Board filed a petition under Section 10(j) of the NLRA in the United States District Court for the District of New Jersey, the district in which the alleged unfair labor practices occurred, to obtain a temporary order directing the abolition of a discriminatorily-motivated independent contractor system and the reinstatement of employees as drivers pending the outcome of the unfair labor practice hearing. Centra filed this action on March 27, 1985. On April 1, 1985, respondents filed a motion to dismiss the complaint for lack of jurisdiction and sought attorneys' fees under Rule 11.

Centra's complaint in mandamus claimed that the NLRB's failure to grant petitioners a postponement of the hearing date until June 1, 1985 or thereafter denied them their constitutional right to due process of law. They also claimed that the NLRB retaliated against them in seeking injunctive relief pending the hearing. They requested that this court direct the NLRB to postpone the hearing until after June 1, 1985 and to cease and desist from filing a preliminary injunction under Section 10(j) of the NLRA.

Following a hearing on April 1, 1985, the court denied petitioners preliminary injunctive relief and dismissed their complaint in mandamus for lack of jurisdiction. The court deferred consideration of the NLRB Rule 11 request for attorneys' fees "to allow petitioners the maximum time to prepare for the unfair labor practice hearing scheduled to begin on April 15." (Memorandum and Order of April 11, 1985, 606 F.Supp. at p. 535).

Subsequent to the court's decision, the parties to the labor dispute entered into a non-Board settlement that provided for recognition of the Highway Truck Drivers and Helpers Local Union No. 107 by Centra and reinstatement of certain individuals with backpay. The Union submitted a request to withdraw the unfair labor practices charge and the Board's Regional Director for its Fourth Region issued an order approving withdrawal of the charge and dismissing the complaint. The Section 10(j) proceedings in the New Jersey District Court were also terminated. Respondents have now renewed their motion for attorneys' fees.

The 1983 amendments to Fed.R.Civ.P. 11 provide in part:

> The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modificatoin or reversal of existing law, and that it is not interposed for any improper purposes, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading motion or other paper is signed in violation of ths rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper including a reasonable attorney's fee.

The Advisory Committee Notes to amended Rule 11 stress that the new rule

expands the court's power to award expenses. "The new language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances.... The standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation."

■ Applying this standard to petitioners' conduct, it is clear that Rule 11 has been violated. Petitioners' counsel in this case must have realized that this court lacked jurisdiction of their complaint. Jurisdiction under the Mandamus Act, 28 U.S.C. § 1361, is very narrow in scope. An action in mandamus lies only where the defendant owes a clear, ministerial and non-discretionary duty. "[A]n act is ministerial only when its performance is positively commanded and so plainly prescribed as to be free from doubt." *Richardson v. United States*, 465 F.2d 844, 849 (3d Cir. 1972) (*en banc*), *rev'd. on other grounds*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). The act of setting a hearing date is in its very nature discretionary. The court has previously stated, "a court may exercise its power to issue a mandamus only when official conduct has gone far beyond any reasonable exercise of discretion.... In this instance, the NLRB's action cannot be characterized as arbitrary or capricious; it can only be characterized as reasonable." (Memorandum and Order of April 11, 1985, p. 534). If counsel had reasonably considered cases arising under the Mandamus Act, it would have been realized that the court's jurisdiction thereunder is narrowly prescribed and for the court to grant the mandamus relief requested would have been clearly inappropriate.

■ In their memorandum in opposition to the renewed motion of respondent for attorneys' fees, petitioners attempt to reargue the merits of the complaint in mandamus. In so doing, the express findings of this court are ignored and the law is misconstrued. Petitioners argue that where a party to an administrative process alleges that the administrative agency has violated the party's procedural due process rights, the party may seek relief in mandamus despite the existence of adequate administrative remedies. In the cases cited by petitioners, the courts have held that mandamus jurisdiction will lie prior to exhaustion of administrative remedies only where exhausting such remedies would be futile, for example, where the very administrative procedure under attack is the one which the agency says must be exhausted. *See, e.g., Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Ellis v. Blum*, 643 F.2d 68 (2d Cir.1981).

Here, exhaustion of administrative remedies could not be characterized as futile. The alleged inadequate opportunity to present a full record could have been addressed at the hearing and a further continuance granted by the hearing officer or Board if it agreed. The Board might have found no unfair labor practice on the record then developed. The NLRB had the opportunity to redress the constitutional deprivation alleged; this was clearly a case "where pursuit of administrative remedies might ultimately render judicial disposition of such issues unnecesary." *Chicago Automobile Trade Assoc. v. Madden*, 328 F.2d 766, 769 (7th Cir.), *cert. denied*, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964). In the circumstances, exhaustion of remedies could not have reasonably been viewed as futile.

■ Petitioner argues that setting a hearing is not a discretionary act that precludes *mandamus* relief. In support, *White v. Mathews*, 559 F.2d 852, 856 (2d Cir.1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978), is cited. The Court of Appeals there held that relief was available under the Mandamus Act to compel the Secretary of Health, Education and Welfare to lessen the time between a request for a hearing in a Social Security Disability case and the final decision. However, the court there found that the Secretary had violated a statutory mandate requiring that hearings proceed with rea-

sonable speed, *id.;* the due process violation had already occurred because of the long delay in obtaining a hearing and final decision. Here, the NLRB has express statutory discretion to set hearings and its refusal to grant a three-month continuance was not unreasonable in the circumstances. The NLRB at or after the hearing might have permitted additional time to complete the record if later convinced that more time was really necessary. There would have been no deprivation of constitutional right if the ultimate NLRB decision favored petitioners even on a limited record. This court was unable to mandate conduct of the NLRB in anticipation of due process violations that had not and might not occur.

Petitioner cites some cases holding that the failure to grant a motion for continuance to obtain testimony of a critical witness deprives movant of its right to defend. *See, e.g., Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921, *reh'g denied,* 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217 (1965); *DiLuigi v. Kafkalas,* 437 F.Supp. 863 (M.D.Pa.1977), *vacated,* 584 F.2d 22 (3d Cir.1978), *cert. denied,* 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979). In these cases, whether a due process violation had occurred was determined after the hearing had been held; no court decided whether a hearing would be fair before the hearing. Petitioners knew or should have learned through reasonable inquiry that their constitutional claim was not ripe for court action.

■ Finally, petitioners attempt to reargue their claim that respondents sought relief under Section 10(j) of the Labor Management Relations Act in retaliation for petitioners' assertion of due process rights. But petitioners continue to make this argument in the wrong forum. The District Court of New Jersey, where the proceeding was pending, was fully competent to consider such a defense. Petitioners should have been aware that it would be improper for this court to intervene in a case pending in another jurisdiction.

■ None of the arguments presented to this court by petitioners in their forty-five page brief have altered this court's earlier conclusion concerning petitioners' conduct. The court remains of the view expressed earlier:

The flimsiness of the reasons offered by counsel for their inability to prepare for the hearing scheduled by the NLRB coupled with the obvious lack of merit in the claim for mandamus and injunctive relief convinces the court that this action has been filed to harass the NLRB and achieve delay not otherwise obtainable rather than to assert a constitutional claim in good faith....

The court's view that Centra has attempted to harass the NLRB by this motion is confirmed by the nature of the subpoenas *duces tecum* served upon the Board's Director for Region Four, Peter Hirsch and upon the Custodian of Records. The subpoena addressed to Director Hirsh requires him to testify on behalf of Centra at a hearing on this mandamus action and to bring with him, *inter alia,* the following documents: 1) each and every unfair labor practice complaint issued by Region Four of the NLRB during the twelve-month period preceding February 20, 1985 and any and all extensions or postponements of the hearing date set forth in each and every such unfair labor practice; 2) each and every memorandum, note page, handwritten note, telephone slip and other document which relates to Centra's request for a postponement of the hearing date or to the request by the Board for authorization to seek relief under Section 10(j) of the NLRA. This demand for documents is extremely broad and burdensome....

(Memorandum and Order of April 11, 1985 at p. 535).

Petitioners' subsequent conduct reinforces this court's conclusion. When they could not obtain the delay they desired, petitioners almost immediately settled the matter without risking litigation of the merits. The NLRB is entitled to attorneys' fees and expenses under Fed.R.Civ.P. 11.